(No. 75-CV-102—)

SONJA BUZAN, on behalf of WILLIAM P. BUZAN, Deceased, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 6, 1975.*

SONJA BUZAN, Claimant, pro se.

WILLIAM J. SCOTT, Attorney General, for Respondent.

PER CURIAM.

This claim arises out of a criminal offense that occurred on January 5, 1974, at Derby Tavern, Christian County, Taylorville, Illinois. Sonja Buzan, wife of the victim, seeks payment of compensation pursuant to the provisions of the "Crime Victims Compensation Act", Ill. Rev. Stat., 1973, Ch. 70, §71, et seq. (hereafter referred to as "*the Act*").

This Court has carefully considered the application for benefits submitted on the form prescribed and furnished by the Court; and a report of the Attorney General of the State of Illinois which substantiates matters set forth in the application. Based upon these documents and other evidence submitted before the court, the court finds:

1. That the claimant's deceased husband, William P. Buzan, age 35, was a victim of a violent crime, as defined in §2(c) of the Act, to wit:

"Murder", (*Ill. Rev. Stat., 1973, ch. 38, §9-1*).

2. That on January 5, 1974, claimant's husband was shot to death by Jack Stevens at Derby Tavern in Taylorville. Prior to the beating, William Buzan had been sitting peaceably at the Derby Tavern, drinking.

3. The police investigation, after the crime was committed, presents no evidence of any provocation by the decedent for the attack upon him by Jack Stevens on the night of January 5, 1974, at the Derby Tavern.

4. That the victim died on January 5, 1974, as a result of the injuries he received in the shooting of that night. A further and more detailed summary of the facts and information considered by the Court is contained in the Investigatory Report prepared by the Attorney General. A copy of said report is retained in the Court's file in this matter, and the facts as reported therein are incorporated in this opinion by reference.

5. That Jack Stevens was indicted in Christian County on charges of murder and subsequently tried and found guilty in said county and sentenced to a period of 50 to 90 years in the State of Illinois correctional institutions.

6. That the victim and his assailants were not related nor sharing the same household.

7. That the criminal offense was promptly reported to law enforcement officials, and claimant has fully cooperated with their requests for assistance.

8. That the claimant seeks compensation under the Act for loss of support to herself and her daughter, Susan Jane Buzan, age 10.

9. That at the time of William P. Buzan's death, he was 35 years old and had a life expectancy to age 76 according to actuarial tables. Therefore, we must conclude that the decedent's family has lost his financial support for the remainder of his normal life expectancy, computed to be 41 years.

10. That the victim's average monthly earnings for the 6 months immediately preceding his death were $800, but earnings of only $500 per month can be considered as the basis for determining loss of support, pursuant to the following provision in §4 of the Act:

". . . loss of support shall be determined on the basis of the victim's average monthly earnings for the 6 months immediately preceding the date of the injury or on $500 per month, whichever is less."

11. That, based on the victim's normal life expectancy of 41 years, and taking $500 per month as his average earnings, the loss of support to this family is computed to be an amount far in excess of the $10,000 maximum amount that can be awarded as compensation under the Act for any loss resulting from a violent crime.

12. That, in addition to loss of support, the claimant incurred funeral expenses for the victim which were partially covered by insurance benefits, and the gross amount of the pecuniary loss as computed before deductions and setoffs is as follows:

Funeral Expenses .................................. $1,855.48

13. That, in determining the amount of compensation to which an applicant is entitled, §7(d) of the Act states that this court—

"(d) shall deduct $200 plus the amount of benefits, payments or awards, payable under the 'Workman's Compensation Act,' or from local governmental, State or Federal funds or from any other source, [except annuities, pension plans, Federal social security benefits and the net proceeds of the first ($25,000) Twenty-five Thousand Dollars of life insurance that would inure to the benefit of the applicant . . .]".

We interpret the above provision to mean that the benefits received by the victim's family as a result of his death, and deduction of $200, shall be deducted from the total loss sustained and not from the $10,000 maximum amount payable under the Act. On this point we are adopting a recent opinion of the Massachusetts Supreme Court on the same point arising under the provisions of an Act identical to ours in all material respects: *Gurley* v. *Commonwealth* (1973), 296 N.E. 2d 477.

14. That, in the claim before us, the benefits received by the claimant, as contemplated by §7(d) of the Act, were shown to be in the total sum of $1,855.48. This amount, plus the statutory deduction of $200, having been deducted from the gross amount of loss as calculated in ¶11 and 12, leaves the amount of the actual loss sustained by the claimant and her child far in excess of the $10,000 maximum amount that can be awarded under the Act for any loss resulting from a violent crime. Hence, the claimant and her child are entitled to an award in the maximum amount payable under the Act, $10,000.

The Court takes notice of the fact of the minor child of the deceased victim, who is named in ¶8 of this opinion, was also dependent on William Buzan as was his surviving spouse, Sonja Buzan, the claimant, and the mother of decedent's said minor child.

Under these circumstances the court is required to interpret and comply with the following language of the Act found in §8(b):

"(b) If the Court of Claims finds, in the case of an application made by a person dependent for [her] support on a deceased victim, that persons other than the applicant were also dependent on that victim for their support, it [the Court] shall also (1) name those persons in its order; (2) state the percentage share of the total compensation award and the dollar amount to which each is entitled, and (3) order that those amounts to be paid to those persons directly or, in the case of a minor or incompetent, to his [her] guardian or conservator, as the case may be."

To comply strictly with the above legislative directive, it would seem appropriate and reasonable to order the distribution of the $10,000 award in accordance with the rule of distribution stated in §11(1) of the Probate Act. This rule would allow one-third ($3,333.33) to the victim's surviving spouse, and the remaining two-thirds ($6,666.66) to the victim's minor child. This would create a separate estate in the amount of $6,666.66 for Susan Buzan, age 10.

However, to make distribution in this manner, we believe would impose an undue hardship on the mother. If the $10,000 award were paid to her in a lump sum, she would be holding $6,666.66 in trust for her minor child. Although she is guardian of her person, she would have no power to administer her estate nor use her funds unless she is duly appointed guardian of the minor's estate as provided by law. *Perry* v. *Carmichael,* (1880), 95 Ill. 519. After such appointment, she would be required to manage her child's funds frugally under the direction of the appointing Court and present periodic accounts of her guardianship to such Court. She would also be responsible for Court costs and any legal expenses required in filing her petition for appointment, oath, surety bond, and accounts.

To obviate necessity of the claimant being appointed

guardian of her child's estate, and considering all other facts in this case, the Court believes that the best interest of the victim's family would be served by our ordering that this award be disbursed to the claimant in periodic monthly payments as authorized in §8(a) (4) of the Act. As the natural guardian of the minor child, the mother has a legal obligation to provide for her suitable support and education. In fulfilling this obligation, we believe she would necessarily be required to expend the proper amount from each monthly payment received hereunder for the care and nurture of her child as well as for her own necessities.

It Is HEREBY ORDERED that the total sum of $10,000 be awarded to the claimant and her minor child, collectively, as persons who are dependent for their support on William Buzan, the deceased victim of a violent crime.

It Is FURTHER ORDERED that the aforesaid award be paid to the claimant, Sonja Buzan, in twenty (20) equal monthly installments of $500 each. The Court directs that said monthly payments shall be made from the Court of Claims Fund insofar as it is legally possible to do so.